# OFFICE OF THE FEDERAL PUBLIC DEFENDER
# FOR THE NORTHERN DISTRICT OF NEW YORK



Syracuse Office

4 Clinton Square
3RD FLOOR
SYRACUSE, NY 13202
(315) 701-0080
(315) 701-0081 FAX

Albany Office

54 State Street
STE 310
ALBANY, NY 12207
(518) 436-1850
FAX (518) 436-1780

Lisa Peebles – Federal Public Defender
Anne LaFex – First Assistant

August 26, 2025

Hon. Mae A. D'Agostino
United States District Court
445 Broadway
Albany, New York 12207

      Re: <u>United States v. Jose Barrera-Mendoza</u>
        Case No. 25-mj-220-MAD

Dear Judge D'Agostino:

  I am writing to request that following the entry of Mr. Barrera-Mendoza's guilty plea on August 28 before Your Honor, the Court proceed to immediate sentencing. For the following reasons, we believe the circumstances merit such an approach, and that the Court should ultimately sentence Mr. Barrera-Mendoza to a period of time-served.

  As a procedural matter, Mr. Barrera-Mendoza waives a full Pre-Sentence Investigation Report. We believe that the combination of the Pre-Trial Services Report, case documents including the Criminal Complaint and the offer of proof, and the facts proffered herein will provide sufficient information for the Court to meaningfully exercise its sentencing authority under Section 3553(a) and Fed. R. Crim. Pro. 32(c)(1)(B). The Government, for its part, does not object to an immediate sentencing on an expedited basis.

  Mr. Barrera-Mendoza[1] is now 46, and is a native and citizen of Honduras. He has been in the United States now for more than half his life, having come here

---

[1] As defense counsel advised during the detention hearing, Mr. Barrera-Mendoza's true name is actually Wilmer Jimenez. ICE and other state and Governmental entities list him instead as Jose Barrera-Mendoza. Thus, for clarity's sake, we will continue to use that convention, but dispute any inference that he was using either name as an alias for nefarious purposes.

in the early 2000s when he was only about 19.  Jose built a life here.  He learned English.  He raised a family here.  He created and cultivated a business here.  And now, it is all in peril given his likely deportation.  Jose understands this.  He accepts it, and is resigned to his fate.  But he knows by virtue of this prosecution that coming back to the United States illegally would permit longer and longer terms of incarceration.  And this he wants to avoid.

      Mr. Barrera-Mendoza has held multiple jobs through the years, but had also created a successful business involving tinting car windows and detailing the vehicles.  This may have a sinister association in the minds of some, but we reject such notions and Mr. Barrera-Mendoza denies any further allegations of wrongdoing.  Notably, he paid his taxes for years, and the business has a Tax ID number.  Ironically, the same Government that now prosecutes him was the beneficiary of many years of his tax payments, to the tune of thousands and thousands of dollars.

      Despite three prior removals from the United States, this appears to be the first time Mr. Barrera-Mendoza has been criminally prosecuted for re-entering the United States.  As such, it is a point of demarcation.  Things, for him, are different now.  And we should take him at his word that he intends to remain in Honduras rather than risk another return to the United States.

      I calculate the Guideline range as follows.  Starting out with a base offense level of 8 under Chapter 2L2.1, two levels are reduced accounting for Mr. Barrera-Mendoza's guilty plea.  As he appears to have been recently been sentenced to about 1 week in custody for a DUI-related offense, this creates 1 criminal history point and places him in Criminal History Category I.  As such, it yields an advisory Guideline range of 0-6 months.  The three weeks he has served is thus a Guideline term.

      However, as the Court is likely aware, this is not Mr. Barrera-Mendoza's final period in custody.  When he finishes this sentence, he will be transferred to immigration custody for an unknown period of time.  And even if he is deported relatively quickly, it will be somewhat of an odyssey of being transferred from detention center to detention center to detention center, and potentially being shipped all over the country.  The Court should account for this likelihood in determining his sentence in this case, secure in the knowledge that he will likely remain in custody one way or another for what amounts to a de facto mid-range Guideline sentence.  That time, in Albany County Jail, the Bureau of Prisons, or in Immigration Detention facilities and transfer facilities, will not be easy.

      We acknowledge that Mr. Barrera-Mendoza has been arrested multiple times, and not just for his immigration status.  However, those arrests, for the most part, have not ripened into convictions.  Some appear to have been dismissed on

account of his deportations, and some for other reasons, on the merits. Most seem to have occurred when Jose was a young man, in his 20s. Therefore, we urge the Court to not give them greater effect by justifying a higher sentence as if he had actually been convicted. It is easy for an undocumented migrant to present as a convenient target, and he is rarely given the benefit of the doubt. But we ask that the Court extend him greater mercy than that extended by other authorities.

The record of deportations and ensuing re-entries belies the fact that Mr. Barrera-Mendoza had created a good life here. He married and had four children, all of whom are United States citizens and were born here, as was his ex-wife. He remarried after his first marriage ended, and gained several new step-children, who are also U.S. citizen. He is a beloved father and husband. This is what kept bringing him back to the United States. This last time, his mother-in-law was stricken by cancer and is being treated, and Jose also came back to support his wife during this most difficult time.

It is easy to characterize those re-entries as repeated violations of the law, or to portray them as demonstrating a disrespect for the law. However, when the law, as it were, would appear to mandate separating a father from his family, the inclination of most people would be to countenance such "violations" in order to be with their families. I cannot begrudge Mr. Barrera-Mendoza for having made such a choice.

A microcosm of this case is seen when Mr. Barrera-Mendoza was to be released from custody in the beginning of August. His family, including his children, came from Massachusetts to pick him up and bring him home. Instead, he was arrested at Saratoga County Jail by ICE agents. So his family drove back in Massachusetts in despair, and separated once again. Certainly he bears some responsibility for his lack of status, which is no doubt the result of his brushes with the law, even as they didn't result in convictions. Yet he is paying a heavy price for that already, and might be in a different position otherwise. Accordingly, he will punished with exile and deportation in a more lasting, enduring manner than whatever jail sentences he might have served had he been convicted after some of those prior arrests.

In addition to this being the first criminal prosecution for an immigration violation, Mr. Barrera-Mendoza's children are older now. Not having him in their daily lives will still be difficult, but less so than when they were younger. His wife and children will be able to visit with him in Honduras. They have already discussed this, and Mr. Barrera-Mendoza looks forward to seeing his own mother. His father passed away from he was a teenager.

Some defendants face a deportation that will not affect them greatly. Their lives are elsewhere, their families reside back home, and they may have only

recently arrived here.  But Mr. Barrera-Mendoza is in a different category where the United States has been his home for most of life and most of what he holds dear is here.  Thus, being removed is a far more drastic penalty, worse than most prison terms.  It is likely to affect him in a much deeper way, and I ask Your Honor to hold onto that effect.  In sum, I would argue that whatever aggravating factors there may be here, are counterbalanced by the foregoing considerations.  I therefore ask the Court to impose a sentence of time-served, and thank the Court for its consideration.

                                               Respectfully submitted,

                                               /s *Jeremy B. Sporn*
                                               Jeremy B. Sporn

Cc:    AUSA Matthew Paulbeck